M.R., K.E., J.S., and R.E., Appellants,

v.

Ann COX, Wesley D. Rucker, Ron Harp, Mike Bradley, Jim Johnson, Stacy Hall, John and Jane Does I Through X, individually and in their official capacity as employees of the State of Oklahoma, Department of Human Services, Appellees,

and

Terry Lee Park, individually and in the official capacity as Youth Counselor for Court Related and Community Services, and The State of Oklahoma, by and through The Department of Human Services, Defendants.

No. 81,317.

Court of Appeals of Oklahoma, Division No. 1.

Aug. 2, 1994.

Rick Rodgers, Duncan, for appellants.

David A. Brown, John G. Fears, and, Jonna Geitgey, Oklahoma City, for appellees.

## ORDER

HANSEN, Presiding Judge.

Pursuant to remand to this Court by Supreme Court Order dated July 19, 1994, the Opinions of this Court, filed April 12, 1994 and July 28, 1994, are hereby withdrawn, and the Opinion attached hereto entered and substituted instead.

DONE BY ORDER OF THE COURT OF APPEALS This 2nd day of August, 1994.

## MEMORANDUM OPINION

Appellants, R.E., K.E., J.S., and M.E. seek review of the trial court's order which granted summary judgment for the Appellees, Ann Cox, Wesley D. Rucker, Ron Harp, Mike Bradley, Stacy Hall and Jim Johnson. Appellants brought this action against Defendant Terry Lee Park, Appellees and Defendant Department of Human Services (DHS) for damages sustained by Appellants from sexual molestation by Park. Appellees and Park were all employees of DHS at the time the molestations occurred. Appellees and DHS moved for summary judgment on the grounds of failure to state a claim upon which relief can be granted and immunity. The trial court granted Appellees' motion for failure to state a claim upon which relief may be granted but denied the Motion by DHS.[1]

Each Appellant brought a separate action against Park, Appellees, and DHS under 42 U.S.C. § 1983.[2] That section provides:

---

1. The Department of Human Services is not a party to this appeal.

2. The four actions were consolidated in district court into C–91–351, Stephens County, Oklahoma.

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

 Section 1983 does not create any substantive rights; it merely provides remedies for deprivations of rights established elsewhere. *McLin v. Trimble,* 795 P.2d 1035, 1042 (Okla.1990). Federal law preempts any state law which conflicts with federal law in § 1983 actions brought in state court. *McLin,* at 1038.

Appellants alleged Appellees owed them a "special duty" as described in *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) and that they violated this duty, thereby violating Appellants' substantive due process rights secured by the 14th Amendment to the United States Constitution. They further alleged Appellees were "deliberately indifferent" to Appellants' constitutional rights to due process, including meaningful access to the courts, to freedom from unreasonable searches and seizures under the 4th Amendment, to privacy, and to liberty.

 In state and federal jurisprudence, summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Hamilton v. Allen,* 852 P.2d 697 (Okla.1993); *Longstreth v. Maynard,* 961 F.2d 895 (10th Cir.1992). All inferences and conclusions drawn from the facts presented to the court in the evidentiary materials must be viewed in a light most favorable to the party opposing the motion. *Ross v. City of Shawnee,* 683 P.2d 535 (Okla.1984).

The undisputed facts show Defendant Terry Park (Park) was hired as Field Youth Counselor I, Stephens County, Court Related and Community Services (CRCS) unit, DHS, in April, 1978. Park was reallocated to Social Worker I in 1981 and transferred to Jefferson County in 1983. Park was promoted to Social Worker III in March, 1985, and remained in this position until his resignation effective July 14, 1989. He served as an intake, probation and parole counselor and his duties included making regular contact with clients and their families, processing and completing juvenile court intake referrals, having weekly contacts with court officials and other service agencies and arranging appropriate services for clients and their families. Clients are those youths referred for intake or other services by parents or law enforcement officials.

In July, *1979,* the Stephens County Youth Services Director made allegations of improper conduct by Park toward three youths. District Supervisor Driskill investigated the allegations, including interviewing the children. Park denied the allegations. In August, 1979, Driskill notified Broughton, Supervisor, of the situation and informed Broughton the situation would be monitored. Nine days later, Gordon, the Coordinator of the Bureau of Institutions and Community Services for Children and Youth requested assistance from Appellee Rucker, Inspector General, to investigate the allegations against Park. Saxon, one of the internal investigators, actually investigated the allegations. After a comprehensive investigation, Saxon concluded in a report that the allegations were *unfounded.* Appellee Rucker forwarded the report to Gordon.

Appellee Bradley was the Assistant District Supervisor, CRCS, and was Park's immediate supervisor at all times except for the period of January, 1979 to November, 1979. Appellee Driskill was Bradley's immediate supervisor until October, 1984 when he was replaced by Sardis, who was replaced by Appellee Johnson in April, 1989. Appellee Hall was the Division Administrator for the Division of Children and Youth from October, 1987, to September, 1992.

Defendant Park met Appellant S. in the summer of 1986 at church. Park molested S. from that time through the summer of 1988. In January, 1987, Appellant R. was referred to Park for juvenile court intake. Following the intake, the District Attorney approved *voluntary* counseling of R. by Park. R. was molested by Park from March, 1987, through May, 1988. In April, 1987, Appellant R.E. was taken to see Park by his father for counseling. In July, 1987, R.E. was referred for juvenile court intake for runaway and attempted larceny. Between the summer of 1987 and May 3, 1990, R.E. was molested by Park repeatedly. In the "summer of 1989", Park contacted Appellant K.E.'s mother and received permission to take K.E. hunting. K.E. was molested at that time and again in the fall of 1989.

In May, 1990, R.E. admitted to a school counselor and his pastor of Parks' molestation and the allegations were reported to the sheriff. In August, 1990, Appellant S. told the pastor of his molestation by Park. None of the individual Appellants told his parents or any other person about Park's molestations prior to the disclosures to the school counselor and pastor.

In November, 1988, the Captain of the Duncan Police Department received a letter from one Hill which alleged Hill was molested by Park *ten years ago* while under CRCS supervision. At the time the letter was written, Hill was in jail. The Captain contacted Sardis, the District Supervisor of CRCS who in turn contacted Appellee Ron Harp, the Programs Administrator, DCYS–CRCS Unit. Appellee Harp contacted Appellee Hall and the matter was referred for investigation. Appellee Ann Cox, was assigned to investigate the Hill allegation on January 9, 1989. Cox reviewed the Saxon report of 1979. On or about June 25, 1989, Appellee Harp was informed that Appellee Cox believed there was enough information to warrant further investigation. Appellee Hall was notified and it was agreed Park should be notified.

The next morning, Appellees Harp, Bradley, and Johnson met with Park regarding the Hill allegation. Park was told his resig-

nation would stop the DHS investigation but the matter would be turned over to the DA's office. Park was also told he could not see clients effective immediately. Appellee Bradley was to monitor Park to assure that Park was not seeing clients. On June 30, 1989, Park sent a letter of resignation, effective July 14, 1989. In August, 1989, a copy of Cox's investigative report was sent to the District Attorney.

The undisputed facts show all Appellees except Bradley either did not know of the 1979 investigation or see the 1979 investigative report until 1989 or 1990. Bradley was not in a supervisory position over Park during the 1979 investigation and had only heard of the incident at a shelter. Bradley first saw the 1979 report in 1990.

We first address Appellants' contention they may maintain this action under § 1983 for violation of their due process rights under the 14th Amendment because they were owed a "special duty" under—*DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).[3] In *DeShaney,* the United States Supreme Court held that a minor could not maintain an action against Winnebago County, its Department of Social Services, and various individual employees of the Department for injuries the minor received *from his father,* even though the county caseworker returned DeShaney to the father's custody and allegedly knew or should have known of the risk of violence to him from his father. The Court held a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause. 489 U.S. at 197–98, 109 S.Ct. at 1004.

The Court distinguished the facts in *DeShaney* from the facts in certain limited circumstances where the Constitution imposes upon the State affirmative duties of care and protection with respect to certain individuals. These duties have been imposed under the Eighth Amendment's prohibition against cruel and unusual punishment, to require the State to provide adequate medical

---

**3.** The Fourteenth Amendment to the United States Constitution provides that "[n]o State

shall ... deprive any person of life, liberty, or property, without due process of law."

care to incarcerated prisoners and under the Fourteenth Amendment, to require the State to provide involuntarily-committed mental patients with such services as are necessary to ensure their reasonable safety from themselves and others. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *DeShaney*, 489 U.S. at 200, 109 S.Ct. at 1005–1006. The key is whether the individual's liberty has been so restrained that it renders him unable to care for himself. *Id.; Maldonado v. Josey*, 975 F.2d 727 (10th Cir. 1992).[4]

■ In the case of the four Appellants before us, the undisputed facts in the motion and response show Appellant R. was referred for *voluntary* counseling from the District Attorney. Appellant R.E. was taken to see Park for counseling by his father. Park contacted Appellant K.E. to go hunting and molested K.E. on this outing and again in the "fall of 1989". Appellant S. met Park in church, and molested S. while hunting with the boy at night.[5] Parks also molested R.E.,

S. and R. in Park's CRCS office. Appellants have shown no set of facts to demonstrate the boys' freedom, as contemplated by *De-Shaney*, was so restrained that they or their parents were unable to care for themselves.[6] The record reflects the boys were taken for counseling on a voluntary basis. According to the facts, DHS did not have custody or control over the boys thereby rendering them or their parents, unable to care for themselves.[7] Accordingly, Appellants have not shown their constitutional rights were violated using the "affirmative duty" analysis in *DeShaney*.

■ If no affirmative duty was required, Appellants argue, then Appellees may still be held liable for Park's molestation of Appellants because Appellees were "deliberately indifferent" to Park's violation of their constitutional rights. The law is well settled that supervisory personnel cannot be held liable under 42 U.S.C. § 1983 for the acts of subordinates under the doctrine of Respondeat Superior. *Greason v. Kemp*, 891 F.2d 829 (11th Cir.1990); *Stoneking v. Bradford Area School District*, 882 F.2d 720, 724 (3rd Cir. 1988). However, supervisors and/or municipalities may be liable under § 1983 where the policymakers make a deliberate choice to follow a course of action or policy and the policy reflects "deliberate indifference" to the

---

4. In *Maldonado*, the 10th Circuit held compulsory school attendance did not give rise to an affirmative duty under the Due Process Clause, to protect a child from harm not inflicted by the State. The Court determined the compulsory school laws did not restrain a child's liberty so as to render the child and his or her parents unable to care for the child's basic needs. In *Maldonado*, a student hung himself in a school coat closet. Thus, the harm to the student in *Maldonado* was not caused by a state actor, similar to the facts in *DeShaney*.

5. Park had further contact with S. by virtue of Park's close relationship with law enforcement officials in the county. Certain officials in law enforcement apparently gave Park "quasi-officer" responsibilities and entrusted Park with overseeing certain juveniles who got into trouble with law enforcement. The Sheriff allowed Park to drive S. home one evening after police were called to investigate a complaint involving S. and friends. On another occasion, S.'s mother contacted Park about a burglary by S. and Park participated in the interrogation of S. at the Sheriff's office.

6. Appellants make much of the fact that Park wore a probation officer's belt buckle, used a law enforcement radio and was involved with local law enforcement. These facts, Appellants argue, are sufficient to demonstrate the State had effectively restrained the boys' liberty, thereby triggering an affirmative duty. The restraint of liberty contemplated in *DeShaney* is of the type which renders an individual unable to care for himself, such as incarceration or commitment. Appellants have pointed to no authority which would indicate a person's subjective intent regarding his freedom or lack thereof constitutes the actual restraint of liberty as contemplated in *DeShaney*.

7. In *DeShaney*, the Court noted that several states have held that a state may be liable under the Due Process Clause for failing to protect children in foster homes from mistreatment at the hands of the foster parents. *DeShaney*, at 201, note 9, 109 S.Ct. at 1006, note 9. The allegations of constitutional violations by Appellants, however, are not against foster parents.

constitutional rights of another, or where a supervisor has personal involvement in the violation. *Stoneking*, at 725; *Rode v. Dellarciprete*, 845 F.2d 1195 (3rd Cir.1988). This is an independent basis for liability and is unrelated to the issue of an affirmative duty of care in *DeShaney*. *Stoneking*, at 725.

 There are two ways to be liable under § 1983: (1) for one's own constitutional tort, or (2) for another's tort: for causing the plaintiff to be subjected to the constitutional violation. *Sample v. Diecks*, 885 F.2d 1099, 1113 (3rd Cir.1989). Mere allegations of negligence are not sufficient to state a claim for a deprivation of due process under the 14th Amendment. *McLin v. Trimble*, 795 P.2d 1035, 1043 (Okla.1990). To show a due process violation under § 1983 a plaintiff must show five elements:

1. that he was deprived of a protected liberty or property interest;
2. that the deprivation was without due process;
3. that the defendant subjected the plaintiff or caused the plaintiff to be subjected to the deprivation;
4. that the defendant was acting under color of state law;[8] and,
5. that plaintiff suffered injury as a result of the deprivation without due process.

*Sample*, at 1113. In their briefs, the parties primarily argue the facts concerning causation: whether Appellees knew or should have known of Park's molestation of Appellants and whether they were deliberately indifferent or reckless with regard to Appellants' constitutional rights.[9] Appellants have the obligation to prove that there exists a *direct nexus* between the constitutional torts and the Appellees' authorization or approval thereof. *D.T. by M.T. v. Independent School District No. 16 of Pawnee County, Oklahoma*, 894 F.2d 1176, 1187 (10th Cir.1990).[10]

 Viewing the undisputed evidence in the light most favorable to the Appellants, we conclude the trial court correctly determined Appellees were not liable as a matter of law under § 1983 for the acts committed by Park. The undisputed facts show none of the individual Appellants told any other person of Parks' abuse until *after* the 1989 investigation into the Hill allegation and *after* Park had resigned. There are no facts to indicate Appellees knew Parks was molesting any clients or should have known of Park's abuse. The undisputed facts show none of the Appellees except Bradley knew about the 1979 investigation until the 1989 allegation by Hill surfaced. Even if they did, the detailed investigation of the 1979 charge ended with a conclusion that the charges were *unfounded*. Appellants' assertion Appellees participated in a "conspiracy to coverup wrongdoing" are simply not grounded in fact. We can find no evidence and Appellants point to none, as there was in *Stoneking, supra,* that Appel-

8. Generally, state employment is sufficient to render the defendant a "state actor" for purposes of the § 1983 requirement that the violation occur under "color of state law". *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). However, a public employee is only acting under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. *Id.*, at 50, 108 S.Ct. at 2255. See *D.T. by M.T. v. Independent School District No. 16 of Pawnee County, Oklahoma*, 894 F.2d 1176 (10th Cir.1990), where the Court determined a school teacher was not acting "under color of state law" when he molested students.

9. Reckless intent may violate § 1983. *Medina v. City and County of Denver*, 960 F.2d 1493 (10th Cir.1992). "[R]eckless intent is established if the actor was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard

of the consequences." *Medina*, at 1496. It is not enough that the defendant act recklessly in disregard of a known risk to the public at large; the defendant's conduct must be directed toward the plaintiff. *Id.* Reckless conduct can be considered directed at a plaintiff if the plaintiff is a member of a limited and specifically definable group, the defendant's conduct specifically put the members of that group at substantial risk of serious, immediate, and proximate harm, the risk was obvious or known, and the defendant acted recklessly in conscious disregard of that risk. *Id.*

10. In *D.T. by M.T.*, the 10th Circuit Court of Appeals concluded the acts of sexual molestation by an Oklahoma elementary school teacher against school students during summer vacation constituted too remote a consequence of the school district's hiring and investigation policy. The school's procedures did not amount to "deliberate indifference" or "reckless disregard" for the student's rights.

lees, Park's supervisors, maintained a custom, practice or policy that condoned or authorized the assaultive behavior of Park. The undisputed facts show Appellees promptly investigated the Hill allegation and when the report was final, called Park in, accepted his resignation and terminated his authority to see clients immediately. The uncontroverted facts fail to show Appellees acted with deliberate indifference or with reckless intent regarding Appellants' constitutional rights.

■■■■■ Appellants' petitions alleged, in addition to the due process violations, that their Fourth Amendment rights, Eighth Amendment rights and right to access the courts under the Fourteenth Amendment were violated.[11] Appellants maintained Park "seized" them in violation of the Fourth Amendment. A seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied. *Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). All of the allegations in Appellants' petitions relate to whether *Park* seized Appellants. Appellants have presented no facts establishing an unreasonable seizure of Appellants by Appellees or that Appellees acted intentionally or with reckless disregard to Appellants' Fourth Amendment rights. The trial court properly granted summary judgment on this claim.

■■■■ With regard to their Eighth Amendment claim, Appellants have shown no set of facts which would entitle them to relief from Appellees based on any violation by Appellees of Appellants' rights to be free from cruel and unusual punishment.[12] Appellants also alleged their constitutional rights to access the courts were violated because they were subjected to the "control" of DHS, via Park's counseling, without being adjudicated in juvenile court. Appellants have not established through facts supported by evidentiary material, the precise violation of which they complain nor Appellees' connection with the alleged violation. The trial court did not err in granting summary judgment in favor of Appellees on these claims.

■■■■ The next issue raised by Appellants on appeal is the constitutionality of the notice provision in the Governmental Tort Claims Act, 51 O.S.1991, § 156. We can find nothing in the record to indicate this issue was presented to the trial court nor that notice under the Governmental Tort Claims Act is in issue.[13] Issues not presented to the trial court will not be considered for the first time on appeal. *Bane v. Anderson, Bryant & Co.*, 786 P.2d 1230, 1236 (Okla.1989).

■■■■ Finally, Appellants maintain Appellees are not entitled to qualified immunity. Qualified or "good faith" immunity is an affirmative defense that must be pleaded by a defendant official. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In general, the doctrine of qualified immunity provides that government officials who perform discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Pueblo Neighborhood Health Cen-*

---

**11.** The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

The Eighth Amendment reads: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

A denial of access to the courts is a violation of the 14th Amendment and actionable under 42 U.S.C. § 1983. *Germany v. Vance*, 868 F.2d 9 (1st Cir.1989).

**12.** The Eighth Amendment is addressed to bails, fines and punishments and applies primarily and "perhaps exclusively" to criminal prosecutions and punishments. *Browning–Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 262, 109 S.Ct. 2909, 2913, 106 L.Ed.2d 219 (1989); *DeShaney*, 489 U.S. at 199, note 6, 109 S.Ct. at 1005, note 6.

**13.** Appellants admitted in their response to the motion for summary judgment that notice was timely given and also state DHS has not alleged untimely notice. However, Appellants argue in their Petition in Error, they feel it is their "ethical duty" to raise this issue on appeal.

*ters, Inc. v. Losavio,* 847 F.2d 642 (10th Cir.1988).

Although Appellees moved for summary judgment both for failure to state a claim and on grounds of immunity, the trial court granted summary judgment on the basis of failure to state a claim upon which relief may be granted. Having determined that the trial court correctly granted summary judgment on that ground, we need not determine whether the doctrine of qualified immunity would have shielded Appellees from this action.

The judgment of the trial court is accordingly, AFFIRMED.

JONES, P.J., and ADAMS, J., concur.