2008 UT App 410

**STATE of Utah, Plaintiff and Appellee,**

v.

**Ozwald BALFOUR, Defendant
and Appellant.**

No. 20070902–CA.

Court of Appeals of Utah.

Nov. 14, 2008.

Rehearing Denied Dec. 5, 2008.

Benjamin A. Hamilton, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Laura B. Dupaix, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges GREENWOOD, DAVIS, and McHUGH.

## OPINION

McHUGH, Judge:

¶ 1 Defendant Ozwald Balfour seeks interlocutory review of the trial court's denial of his three motions: (1) Motion to Quash Bindover; (2) Motion to Sever Counts; and (3) Motion to Disqualify District Attorney's Office. We affirm the trial court's rulings on the first and third motions, and we affirm in part and reverse in part its ruling on the second motion.

## BACKGROUND

¶ 2 On February 8, 2005, the State charged Balfour by information with two counts of forcible sexual abuse, a second degree felony, *see* Utah Code Ann. § 76–5–404 (2003) (current version as amended at Utah Code Ann. § 76–5–404 (Supp.2008)), and one count of attempted forcible sexual abuse, a third degree felony, *see id.*[2] The State amended the information on April 21, 2005, to add an additional count of forcible sexual abuse. At the preliminary hearing, held on March 7,

2006, Balfour was bound over for trial on all four counts, which arise from the following allegations.[3]

### I. Count I

¶ 3 On January 21, 2005, M.L. went to the vocational school operated by Balfour to register for classes. Balfour invited M.L. to his office but instead led her into an adjacent room and locked the door. When M.L. asked Balfour why he locked the door, Balfour grabbed M.L.'s shirt and said, "You have two minutes or two seconds to take me or prove to me...." M.L. pushed his hands away and indicated that his advances were unwelcome. Balfour tried to lift M.L.'s shirt while M.L. repeatedly "push[ed] his hands away[,] telling him this wasn't the kind of schooling my father was going to finance." The encounter lasted approximately five minutes, during which time Balfour managed to lift M.L.'s shirt "[e]nough to show [her] flesh" and put his "hand ... across [her] breast." Once M.L. broke free, she pounded on the door and yelled, "Let me out of here" or "Can anybody hear me?" Balfour then unlocked the door, and M.L. left.

### II. Count II

¶ 4 R.O. accompanied M.L. to Balfour's office on January 21, 2005, for what R.O. believed to be an acting job interview. Balfour took R.O. back to his office where they talked about acting and her family for a few minutes. Balfour then took R.O. to an unlit room and shut the door. Balfour said, "You have so many minutes" to "show me how a love scene goes." R.O. refused, stating she was "happily married" and she was "not going to sleep [her] way to the top or to get a job." Balfour then grabbed R.O.'s arm

minimum mandatory sentences not in effect during the time relevant to Balfour.

3.  Balfour has not yet been tried or convicted and is presumed innocent. Nevertheless, at the preliminary hearing, "[t]he magistrate ... view[s] the evidence in a light most favorable to the prosecution and resolve[s] all inferences in favor of the prosecution." *State v. Hawatmeh*, 2001 UT 51, ¶ 3, 26 P.3d 223 (internal quotation marks omitted). The background facts are therefore recited accordingly.

2.  Although the amendment did not change the language we are reviewing on appeal, we refer to the code in effect at the time Balfour was charged because the revised statute now includes

above the elbow with one hand and squeezed her breast over her shirt with the other. R.O. pushed him away and walked out the door.

## III.  Count III

¶ 5 In August or September 2003, D.J. applied for a web design class at Balfour's media production school.  During the application process, Balfour asked D.J. to stand up and turn around so he could look at her. When D.J. questioned Balfour's intentions, he asked D.J. if she was interested in film. D.J. said no and left.  Approximately one week later, D.J. began attending classes. When D .J. had difficulty obtaining financial aid, Balfour suggested she earn money by "be[ing] in lingerie and on film" and "do[ing] sexual things."  D.J. was uncomfortable with these comments and left the school.[4]

¶ 6 On September 15, 2003, Balfour called D.J. to inquire whether he could bring her some financial aid paperwork that needed to be completed by the next morning.  Balfour arrived at D.J.'s home around 8:00 or 9:00 p.m., she invited him in, and they sat on separate couches.  After greeting D.J. and placing the paperwork on the coffee table, Balfour walked over to D.J., pinned her shoulders against the couch, and pressed his inner thighs against her outer thighs.  Balfour asked if D.J. "was interested in doing anything for the money for the school."  D.J. said no and asked Balfour to leave.  Instead of leaving, Balfour "dropped his pants," moved his legs between hers, and said, "Come on, come on.... Let me, let me." Again D.J. resisted and asked Balfour to leave.  Balfour began rubbing his penis against D.J.'s vagina over her spandex shorts, simulating intercourse.  Balfour attempted to remove D.J.'s shorts and shirt, but D.J. held on to her clothing.  Balfour finally retreated when D.J.'s screams awakened her fourteen-month-old daughter who was asleep in the same room.

## IV.  Count IV

¶ 7 On January 21, 2005,[5] R.G. met Balfour while she was shopping at a Wal–Mart near Balfour's office.  Learning that R.G. had quit her job, Balfour invited her to his office for employment information.  R.G. stopped by Balfour's office that afternoon and completed an application.  Balfour then took R.G. to his office, shut the door, and asked if she wanted to take off her jacket.  R.G. refused.  Balfour asked R.G. to turn around and made comments such as "[n]ice package" and "[y]ou're pretty" while she did so.  He then repeated his invitation for her to take off her jacket.  When R .G. again declined, Balfour unzipped her jacket, pushed it off her shoulders, pulled her towards him, and tried to lift the tank top she was wearing underneath the jacket.  Balfour managed to pull the shirt high enough to expose R.G.'s bra before R.G. was able to push it back down and zip her jacket.  R.G. backed away.  Following the incident, R.G. chatted briefly with Balfour and had some photographs taken.  R.G. then left the facility.

## V.  Balfour's Prior Relationship with the District Attorney

¶ 8 During the course of plea negotiations, Balfour requested a meeting between his counsel, District Attorney Lohra Miller (the District Attorney), and the assigned state prosecutor.  During this meeting, the District Attorney recognized Balfour's name and realized his business was the media company she used, free of charge, during her election campaign.  She also realized Balfour was an active member of the Salt Lake County Republican Party, which had campaigned for her election.  In response, the District Attorney immediately removed herself from further discussion of the charges.  Balfour and his counsel later requested that the entire office be disqualified from prosecuting the case.  The District Attorney declined, instead assigning supervisory authority over

---

**4.**  D.J. returned on one occasion because "[she] was trying to look past it, and go to school."

**5.**  The record contains conflicting evidence as to whether R.G.'s encounter with Balfour occurred on January 20, 2005, or January 21, 2005.  Because the amended information alleges that the

incident occurred on January 21, 2005, we use that date in this decision.  For purposes of this appeal, however, it is sufficient to note that the incident occurred within twenty-four hours of counts I and II.

the prosecution to an assistant district attorney. Balfour's counsel suggested that the issue of whether the entire office should be disqualified be submitted to the Utah State Bar's Ethics Advisory Committee. The assigned assistant district attorney indicated that he would need the District Attorney's approval to bind his office to the committee's decision.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 9 Balfour relies on this court's interpretation of the forcible sexual abuse statute in *State v. Jacobs*, 2006 UT App 356, 144 P.3d 226, to argue that the district court erred in denying his motion to quash the bindover. To bind over a defendant for trial, the magistrate need only find probable cause for each element of the charge. *See State v. Clark*, 2001 UT 9, ¶¶ 10, 15, 20 P.3d 300. The bindover standard is intentionally low so that the credibility of witnesses and the truthfulness of the facts are left to the factfinder. *See State v. Virgin*, 2006 UT 29, ¶ 21, 137 P.3d 787 (citing *State v. Talbot*, 972 P.2d 435, 438 (Utah 1998)). "[I]n reviewing a magistrate's bindover decision, an appellate court should afford the decision limited deference." *Id.* ¶ 26.

■ ¶ 10 Next, Balfour argues that the district court erred in denying his motion to sever the four counts of the amended information. "[T]he grant or denial of severance is a matter within the discretion of the trial judge, so we reverse [a denial] only if the trial judge's refusal to sever charges 'is a clear abuse of discretion in that it sacrifices the defendant's right to a fundamentally fair trial.'" *State v. Lopez*, 789 P.2d 39, 42 (Utah Ct.App.1990) (quoting *State v. Pierre*, 572 P.2d 1338, 1350 (Utah 1977)). "Under [the abuse of discretion] standard, we will not reverse ... unless the decision exceeds the limits of reasonableness." *State v. Clopten*, 2008 UT App 205, ¶ 12, 186 P.3d 1004 (internal quotation marks omitted).

■ ¶ 11 Finally, Balfour challenges the trial court's decision to deny his motion to disqualify the entire Salt Lake County District Attorney's Office. Trial courts are generally allowed considerable discretion in granting or denying motions to disqualify counsel, and such decisions will only be overturned when that discretion is exceeded. *See State v. Wareham*, 2006 UT App 327, ¶ 10, 143 P.3d 302. "However, due to the 'special interest in administering the law governing attorney ethical rules,' a trial court's discretion in situations implicating those rules is 'limited.'" *Id.* (quoting *Houghton v. Utah Dep't of Health*, 962 P.2d 58, 61 (Utah 1998)). Thus, attorney disqualifications are reviewed as mixed questions of law and fact. *See United States v. Bolden*, 353 F.3d 870, 878 (10th Cir.2003). "First, we review the district court's factual conclusions under a clear error standard. Second, we review the district court's legal interpretation of particular ethical norms under a de novo standard when that interpretation implicates important constitutional rights." *Id.* (citation omitted).

## ANALYSIS

### I. Motion to Quash Bindover

■ ¶ 12 To issue a bindover, the magistrate must find "probable cause to believe that the crime charged has been committed and that the defendant has committed it." Utah R.Crim. P. 7(i)(2). The bindover standard, however, "'is not that of a rubber stamp for the prosecution.'" *Clark*, 2001 UT 9, ¶ 10, 20 P.3d 300 (quoting *State v. Hester*, 2000 UT App 159, ¶ 7, 3 P.3d 725). The prosecution must still show "believable evidence of all the elements of the crime charged." *Id.* ¶ 15 (internal quotation marks omitted). Although the evidence must be credible, the evidence need not establish guilt beyond a reasonable doubt. *See id.*

¶ 13 Balfour was charged under Utah Code section 76–5–404 with three counts of forcible sexual abuse and one count of attempted forcible sexual abuse.

A person commits forcible sexual abuse if the victim is 14 years of age or older and, under circumstances not amounting to rape, object rape, sodomy, or attempted rape or sodomy, the actor touches the anus, buttocks, or any part of the genitals of another, *or touches the breast of a female, or otherwise takes indecent liberties with another,* or causes another to take

indecent liberties with the actor or another, with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person, without the consent of the other, regardless of the sex of any participant.

Utah Code Ann. § 76–5–404 (2003) (current version as amended at Utah Code Ann. § 76–5–404 (Supp.2008)) (emphasis added).

¶ 14 Balfour argues that the State failed to put on evidence to prove that Balfour touched the bare skin of his victims. *See generally State v. Jacobs*, 2006 UT App 356, ¶¶ 6–9, 14, 144 P.3d 226 (holding that the forcible sexual abuse touching standard requires nonconsensual contact with the victim's bare skin). The State, in the instant case, presented no evidence of bare-skin contact with the proscribed body parts. Balfour therefore claims that the bindover should be quashed. The amended information, however, charged Balfour with both touching and taking indecent liberties. While the State concedes it did not present evidence to satisfy the touching prong in light of *Jacobs*, it argues that it presented sufficient evidence to bind Balfour over under the taking indecent liberties prong.[6] We agree.

■ ¶ 15 The phrase "otherwise takes indecent liberties" has not been defined by the Utah Legislature. Applying the doctrine of *ejusdem generis*,[7] the Utah Supreme Court interpreted this phrase to mean activities of the "same magnitude of gravity as that specifically described in the statute." *In re J.L.S.*, 610 P.2d 1294, 1296 (Utah 1980); *see also State v. Kennedy*, 616 P.2d 594, 597 & n. 4 (Utah 1980) (noting the supreme court's invocation, in *In re J.L.S.*, 610 P.2d 1294 (Utah 1980), of the doctrine of *ejusdem generis* to define the phrase "or otherwise takes indecent liberties"). To determine whether the conduct is of equal gravity to the touching prong, the court must consider the totali-

ty of the facts, *see State v. Peters*, 796 P.2d 708, 711 (Utah Ct.App.1990), including the five factors identified in *State v. Bishop*, 753 P.2d 439, 482 (Utah 1988), *overruled in part on other grounds by State v. Menzies*, 889 P.2d 393 (Utah 1994). The *Bishop* factors are "(1) the nature of the victim's participation (whether the defendant required the victim's participation), (2) the duration of the defendant's acts, (3) the defendant's willingness to terminate his conduct at the victim's request, (4) the relationship between the victim and the defendant, and (5) the age of the victim." *Bishop*, 753 P.2d at 482. If, after "considering all the surrounding circumstances, the conduct is comparable to the touching that is specifically prohibited," the defendant "may still be punished under the indecent liberties prong" of Utah Code section 76–5–404. *Jacobs*, 2006 UT App 356, ¶ 9, 144 P.3d 226.

¶ 16 In *State v. Peters*, 796 P.2d 708 (Utah Ct.App.1990), we considered a charge based on taking indecent liberties. There, defendant offered the seventeen-year-old female victim a ride home from school, took her to an abandoned house on the pretext of showing her artwork, grabbed the victim by her jacket, pushed her down the hallway, *see id.* at 709–10, and told her repeatedly that "he wanted to have sexual relations with her," *id.* at 710. For approximately twenty minutes, the victim pleaded with the defendant to desist. *See id.* After defendant placed his hand on the victim's breast over her clothing, he changed his mind and released her. *See id.* He was convicted of forcible sexual abuse. *See id.* at 709. On appeal, this court held that the totality of the facts supported the defendant's conviction for taking indecent liberties. *See id.* at 711–12.

■ ¶ 17 Here, as in *Peters*, three of the complainants were drawn into an unfamiliar area by pretense. Balfour obtained admission into the fourth complainant's home also

---

6. In *State v. Jacobs*, 2006 UT App 356, 144 P.3d 226, we did not address whether touching the clothed vaginal area of a fifteen-year-old female constituted taking indecent liberties because the State did not charge the defendant under that element of the statute. *See id.* ¶¶ 2, 10.

7. The doctrine of *ejusdem generis* restricts the definition of a general phrase at the end of a statutory list of more specifically proscribed acts to conduct of the "same kind, class, character, or nature as those specifically enumerated, unless there is something to show a contrary intent." *In re A.T.*, 2001 UT 82, ¶ 12, 34 P.3d 228; *accord State v. Piep*, 2004 UT App 7, ¶ 10, 84 P.3d 850.

by pretext, this time by delivering financial aid papers. In all four incidents, Balfour restrained the women against their will, either by closing and locking the door or by physically holding them. Moreover, none of the complainants encouraged or participated in Balfour's conduct. And despite the fact that the complainants were adults, the relationship between Balfour and each woman was unequal. Balfour was the proprietor of a vocational school they wished to attend and the source of potential employment. Furthermore, although the episodes were of shorter duration than the encounter in *Peters*, during each, Balfour ignored the complainants' explicit and repeated demands that he desist. Nor did Balfour voluntarily terminate his advances. In the three incidents at his office, Balfour persisted until the women managed to pull away from him. In the episode involving D.J., Balfour continued his advances until D.J.'s screaming woke her daughter. Balfour placed his hand on the covered breasts of two of the women, rubbed his naked penis against the covered vagina of another, and attempted to lift the shirt to touch the breasts of the fourth. Under both the *Bishop* factors and the totality of the facts, we hold that the trial court did not abuse its discretion in denying Balfour's motion to quash the bindover.[8]

## II. Motion to Sever Counts

¶ 18 Utah Code section 77–8a–1 permits the State to join charges against a defendant into a single trial when certain criteria are met.

(1) Two or more felonies, misdemeanors, or both, may be charged in the same indictment or information if each offense is a separate count and if the offenses charged are:

(a) based on the same conduct or are otherwise connected together in their commission; or

(b) alleged to have been part of a common scheme or plan.

. . . .

(4)(a) If the court finds a defendant or the prosecution is prejudiced by a joinder of offenses or defendants in an indictment or information or by a joinder for trial together, the court shall order an election of separate trials of separate counts, grant a severance of defendants, or provide other relief as justice requires.

Utah Code Ann. § 77–8a–1(a)–(b), (4)(a) (2003). Thus, joinder of multiple offenses is appropriate if the requirements of Utah Code section 77–8a–1(1) are met and neither the defendant nor the prosecution is prejudiced as a result of the joinder. *See id.*

¶ 19 The amended information charged Balfour with three separate counts of forcible sexual abuse and one separate count of attempted forcible sexual abuse. Therefore, the initial inquiry of section 77–8a–1(1), requiring that each offense constitute a separate count, *see id.* § 77–8a–1(1), is satisfied.

¶ 20 The trial court further held that the four counts "are part of a common scheme or plan." This court has interpreted the phrase "common scheme or plan" to apply when the crimes involve a similar fact pattern and proximity in time. *See State v. Lee*, 831 P.2d 114, 117–18 (Utah Ct.App. 1992). "'[T]o be classified as a common plan or scheme it is not necessary for the crimes to have been perpetrated in an absolutely identical manner, so long as the court perceives a visual connection between the two crimes.'" *Id.* at 117 (quoting *State v. Tipton*, 119 Ariz. 386, 581 P.2d 231, 233 (1978)).

### A. Counts I, II, and IV

¶ 21 The trial court properly determined that counts I, II, and IV are part of a common scheme or plan. All three counts involved strikingly similar fact patterns that we have already discussed in detail. Balfour argues, however, that joinder here cannot meet the prejudice prong of section 77–8a–1,

---

8. Balfour also attempts to challenge the trial court's denial of his motion for a new preliminary hearing. However, Balfour makes no arguments and references no law regarding this point. In his reply brief, Balfour merely states "the law requires the Court to remand for an additional preliminary hearing where testimony can be ferreted out to determine if sufficient evidence exists to bind the charges over to trial." This argument is not adequately briefed, and we do not consider it. *See* Utah R.App. P. 24; *Valcarce v. Fitzgerald*, 961 P.2d 305, 313 (1998).

*see* Utah Code Ann. § 77–8a–1(4)(a). In analyzing the prejudice prong, the trial court must determine "whether evidence of the other crime would have been admissible in a separate trial." *Lee*, 831 P.2d at 118. The admissibility of other crimes or prior bad acts is governed by rule 404(b) of the Utah Rules of Evidence, which states:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

Utah R. Evid. 404(b).[9]

¶ 22 The Utah Supreme Court has established a three-part test for assessing whether evidence of other crimes, wrongs, or acts is admissible under rule 404(b). *See State v. Nelson–Waggoner*, 2000 UT 59, ¶¶ 18–20, 6 P.3d 1120. First, the evidence must be presented for a proper, noncharacter purpose. *See id.* ¶ 18; *see also* Utah R. Evid. 404(b). Second, the evidence must be relevant to the offense being prosecuted. *See Nelson–Waggoner*, 2000 UT 59, ¶ 19, 6 P.3d 1120; *see also* Utah R. Evid. 402. Finally, the evidence of other crimes, wrongs, or acts must be admissible under rule 403. *See Nelson–Waggoner*, 2000 UT 59, ¶ 20, 6 P.3d 1120; *see also* Utah R. Evid. 403. Rule 403 permits exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Utah R. Evid. 403.

¶ 23 We first consider whether the evidence of the other crimes in this case is admissible for a noncharacter purpose. *See Nelson–Waggoner*, 2000 UT 59, ¶ 18, 6 P.3d 1120. The State argues that the evidence of the other counts was relevant to demonstrate Balfour's intent, Balfour's lack of accident or mistake, and the complainants' lack of consent. In a criminal proceeding, the State carries the burden of proving the elements of the charge beyond a reasonable doubt. *See State v. Whitely*, 100 Utah 14, 110 P.2d 337, 339–40 (1941). The forcible sexual abuse statute requires the State to prove (1) Balfour took indecent liberties with another over age fourteen, (2) with intent to cause substantial emotional or bodily pain or to arouse or gratify the sexual desire of any person, (3) without consent. *See* Utah Code Ann. § 76–5–404 (2003). While admissibility depends, in part, upon the defenses raised, the general assumption is that "[b]y pleading not guilty, defendant placed all elements of the crime at issue, including ... intent." *State v. Widdison*, 2000 UT App 185, ¶ 33, 4 P.3d 100; *accord State v. Teuscher*, 883 P.2d 922, 926–27 (Utah Ct.App.1994). Thus, we agree with the trial court that evidence from all three counts would be admissible in a trial of any one of them for the noncharacter purpose of showing intent.

¶ 24 We must next examine whether the evidence of the other counts would be relevant. *See Nelson–Waggoner*, 2000 UT 59, ¶ 19, 6 P.3d 1120. Evidence is relevant if it "tends to prove some fact that is material to the crime charged[,] other than the defendant's propensity to commit crime." *State v. Decorso*, 1999 UT 57, ¶ 22, 993 P.2d 837. Here, evidence pertaining to the other counts is relevant because it tends to show Balfour's intent. *Cf. Nelson–Waggoner*, 2000 UT 59, ¶ 27, 6 P.3d 1120 (finding evidence of defendant's other unconvicted rapes relevant to the issue of lack of consent). "While the bad acts evidence [does] not conclusively prove defendant [intended to commit forcible sexual abuse], the evidence made 'the existence of [that material, consequential] fact ... more probable ... than it would be without the

---

**9.** At oral argument, Balfour cited *State v. Gentry*, 747 P.2d 1032 (Utah 1987), and *State v. Banner*, 717 P.2d 1325 (Utah 1986), as support for his argument that the counts should not have been joined. Both of these decisions address the application of rule 609 of the Utah Rules of Evidence to impeachment by evidence of a prior conviction. *See Gentry*, 747 P.2d at 1036–37;

*Banner*, 717 P.2d at 1331–35. The test for joinder of charges, however, utilizes an analysis under rule 404(b), *see State v. Lee*, 831 P.2d 114, 118 (Utah Ct.App.1992), which prohibits the use of character evidence to prove conduct, except under limited circumstances, *see* Utah R. Evid. 404(b).

evidence.' " *Id.* (third alteration and omissions in original) (quoting Utah R. Evid. 401). The evidence is therefore relevant.

¶ 25 Last, we must determine whether the evidence meets the requirements of rule 403. *See id.* ¶ 20. Rule 403 prohibits the admission of otherwise relevant evidence when its probative value is significantly outweighed by the risk of prejudice to the defendant. *See* Utah R. Evid. 403. To determine whether the evidence's probative value is substantially outweighed by the prejudicial effect,

> "a variety of matters must be considered, including the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility."

*State v. Shickles,* 760 P.2d 291, 295–96 (Utah 1988) (quoting E. Cleary, *McCormick on Evidence* § 190, at 565 (3d ed.1984)). In weighing the probative value against the risk of unfair prejudice, the trial court acted within its discretion in finding that these *Shickles* factors weigh in favor of a finding of admissibility. Of particular significance are the facts that the three alleged crimes occurred within the same calendar day and that the circumstances surrounding each incident are strikingly similar. Likewise, the testimony from all three women makes it significantly more likely that Balfour acted with intent. *Cf. Nelson–Waggoner,* 2000 UT 59, ¶¶ 27–30, 6 P.3d 1120 (admitting evidence of other rapes where that evidence went to the element of consent). Without that corroborating evidence, the "trial resolve[s] into a contest of credibility between [the] defendant and [the complainant]." *Id.* ¶ 30.

¶ 26 Furthermore, it is unlikely the evidence will rouse the jury to overmastering hostility. While Balfour argues he "will be greatly prejudiced in that the evidence will be considered in the aggregate, the testimony of one alleged victim will supplement that of another, and the four counts will be wrongfully commingled and inappropriately considered," the Utah Supreme Court has

held that "[s]uch evidence of multiple acts of similar or identical abuse is unlikely to prejudice a jury." *State v. Reed,* 2000 UT 68, ¶ 31, 8 P.3d 1025 (stating that juries rely on witness credibility, not the number of incidents, to determine a defendant's guilt). Moreover, the trial court expressly found the following:

> The evidence in this case involves the touching of protected body parts. It does not involve allegations of more intrusive conduct, such as rape or forcible sodomy. The Court finds that the charged conduct does not rise to the level where a jury would be unable to be fair simply because the evidence comes from a number of different witnesses....

¶ 27 For the reasons stated above, we see no abuse of discretion in the trial court's denial of Balfour's motion to sever counts I, II, and IV.

## B. Count III

¶ 28 The trial court also found count III to be sufficiently similar in facts and proximate in time to the other counts to warrant its joinder with counts I, II, and IV. Although we acknowledge the trial court's careful consideration of this issue, we do not interpret factual similarity and temporal proximity so broadly. In reaching our conclusion, we find informative the Utah Supreme Court's ruling in *State v. Gotfrey,* 598 P.2d 1325 (Utah 1979).

¶ 29 In *Gotfrey,* the defendant was convicted of raping his stepdaughter in September 1975, sodomizing his stepson in October 1976, and raping a second stepdaughter in March 1977. *See id.* at 1327. The defendant appealed the trial court's denial of his motion to quash the information for improper joinder. *See id.* Although the circumstances surrounding the rapes of his two stepdaughters were nearly identical, the supreme court held the incidents were "not of such similarity ... [that] they should have been joined .... [because] the two charges of rape relate to incidents several months apart and with different victims." *Id.* at 1328. The supreme court held that the sodomy count was likewise inappropriately joined because it was "a separate and distinct offense with different

elements." *Id.; see also State v. McCumber,* 622 P.2d 353, 355–56 & n. 4 (Utah 1980) (holding that it was improper to join in one trial two counts of aggravated sexual assault, one count of aggravated burglary, one count of attempted burglary, and one count of attempted rape, where "while four of the five counts charged in the information were indeed of similar character, they did not form part of the same criminal transaction, nor were they so nearly identical to evince a common design or scheme").

¶ 30 Using these cases as guidance, we hold that the trial court exceeded its discretion in finding that count III meets Utah Code section 77–8a–1(1)'s requirement that the offenses be part of a common scheme or plan, *see* Utah Code Ann. § 77–8a–1(1) (2003). Count III occurred on September 15, 2003, while the other three counts occurred on January 21, 2005—a full sixteen months later. Count III involved an incident at the home of the complaining witness rather than an encounter in Balfour's office. Finally, unlike the other cases, D.J. alleges that Balfour rubbed his naked penis against her covered vagina but makes no allegations that Balfour touched or attempted to touch her breasts.[10]

¶ 31 We agree with the State that whether this count should be joined presents a more difficult issue. Nevertheless, we resolve the issue in favor of assuring the defendant a fair trial. "The purpose of [Utah Code section 77–8a–1] is to allow joinder of offenses and thus eliminate multiple prosecutions in the interest of efficiency and economy of time and effort when the interests of justice can best be served thereby." *Gotfrey,* 598 P.2d at 1328. However,

> care must be taken that [section 77–8a–1] is not misused to deprive an accused of a fair trial upon an offense by joining different offenses so that evidence concerning charges unrelated in time and nature . . . could be admitted as to the multiple of-

fenses in an effort to stigmatize the defendant and thus make it questionable that the jury would give a fair and dispassionate consideration to the evidence on the first charge.

*Id.* For the reasons stated above, we hold that the trial court exceeded its discretion in denying Balfour's motion to sever count III.[11]

### III. Motion to Disqualify District Attorney's Office

¶ 32 Balfour contends that the trial court erred by refusing to disqualify the entire Salt Lake County District Attorney's Office due to the preexisting political relationship between the District Attorney and Balfour. The record demonstrates that upon learning of her relationship with Balfour, the District Attorney immediately removed herself from further involvement with the case and assigned supervisory authority to an assistant district attorney. Balfour argues that these screening actions are insufficient for three reasons: (1) he is entitled to supervisory review by an elected prosecutor; (2) the assignment of supervisory authority to an assistant district attorney was merely illusory; and (3) he is unlikely to receive any lenient treatment or have the charges dismissed due to the District Attorney's fear of an appearance of impropriety.

¶ 33 In Utah, a conflict of interest exists when " 'counsel [may] . . . make choices advancing other interests to the detriment of his client.' " *State v. Maughan,* 2008 UT 27, ¶ 26, 182 P.3d 903 (alteration and omission in original) (quoting *Taylor v. State,* 2007 UT 12, ¶ 124, 156 P.3d 739). The duties and prohibitions of a district attorney are outlined in Utah Code section 17–18–1.7. *See* Utah Code Ann. § 17–18–1.7 (2005). While the statute prohibits a district attorney from prosecuting or dismissing any charges against a person the district attorney previously represented, *see id.* § 17–18–1.7(6)(d), it does not expressly restrict her from partic-

---

10. The amended information alleges Balfour put his hand under D.J.'s shirt and touched her breast. However, D.J. expressly refuted this allegation in her testimony at the preliminary hearing.

11. Because we hold that count III is not part of a common scheme or plan, *see* Utah Code Ann. § 77–8a–1(1) (2003), we need not consider whether Balfour would be prejudiced by joining it for trial with the other counts, *see id.* § 77–8a–1(4).

ipating in a case where she has had a personal or business relationship with the accused, *see id.* § 17–18–1.7. Nevertheless, Utah courts have found disqualification proper whenever the prosecutor has a conflict of interest with the charges or the defendant. *See State v. Nickles,* 728 P.2d 123, 131 (Utah 1986); *State v. McClellan,* 2008 UT App 48, ¶ 19, 179 P.3d 825, *cert. granted,* 2008 Utah LEXIS 127 (Utah July 11, 2008). In this case, the District Attorney voluntarily recused herself from Balfour's prosecution to avoid even an appearance of impropriety.[12]

¶ 34 Despite the District Attorney's withdrawal, Balfour claims that the entire prosecutor's office should have been removed. When disqualification is appropriate, it is usually sufficient to disqualify the particular attorney with a conflict rather than the entire office. *See United States v. Bolden,* 353 F.3d 870, 879 (10th Cir.2003); *see also People v. Vasquez,* 39 Cal.4th 47, 45 Cal. Rptr.3d 372, 137 P.3d 199, 205 (2006) ("In most circumstances, the fact one or two employees of a large district attorney's office have a personal interest in a case would not warrant disqualifying the entire office." (footnote omitted)); *People v. Rupp,* 75 Misc.2d 683, 348 N.Y.S.2d 649, 652 (Sup.Ct.1973) ("[T]he District Attorney should not have disqualified his entire staff, since none of his assistants has an[y] connection with the tenuous conflict of interest."). In Utah, when the conflicted attorney represented the defendant in the same or a related matter, "the entire prosecutor's office will be assumed to be privy to the confidences obtained by [that conflicted attorney]." *McClellan,* 2008 UT App 48, ¶ 22, 179 P.3d 825. Even in those cases, however, the State may rebut the presumption by demonstrating that the conflicted attorney has been screened from involvement in the prosecution. *See id.* The Rules of Professional Conduct also suggest that screening is the most appropriate means of protecting the defendant when the prosecutor has a conflict of interest. *See* Utah R. Prof'l Conduct 1.1(*l* ) (2007); *see also id.* R. 1 .7, 1.9 (mandating that attorneys not represent another in the same or a substantially related matter involving a current or former client).

¶ 35 Here, the District Attorney immediately removed herself from the case and transferred supervisory authority to an assistant district attorney. Thus, even if a presumption of prejudice were imposed, the State has carried its burden of rebuttal. *See McClellan,* 2008 UT App 48, ¶ 22, 179 P.3d 825. We hold that the trial court was correct in finding that disqualification of the entire Salt Lake County District Attorney's Office is unnecessary. *See Bolden,* 353 F.3d at 875 (noting that disqualification of the entire prosecutor's office is a "drastic measure" (internal quotation marks omitted)).

¶ 36 We are also unpersuaded by Balfour's claim that he is entitled to supervisory review by an elected official in the prosecution of the charges against him. Balfour has not referenced any authority to support this proposition. Moreover, the Utah Constitution requires the legislature to establish a system of public prosecutors " 'who shall have primary responsibility for the prosecution of criminal actions brought in the name of the State.' " *State v. Robertson,* 924 P.2d 889, 890 (Utah 1996) (quoting Utah Const. art. VIII, § 16). While the Utah Constitution refers to public prosecutors as elected officials, the Utah Supreme Court has noted that the constitution only confers primary responsibility on the elected prosecutor. *See id.* at 890–91. Thus, the District Attorney "has the authority to delegate the duties and powers conferred by such a provision to subordinates." *Id.* at 892.

¶ 37 Balfour's contention that the transfer of authority from the District Attorney to an assistant district attorney was illusory is also unpersuasive. His claim is based on the assistant district attorney's need to consult the District Attorney before agreeing to be bound by a state bar ethics opinion. The decision to be bound by the opinion, however, has policy implications beyond the prosecution of the case against Balfour. Consultation with the District Attorney on that issue does not negate the delegation of all substantive, case-specific decisions to the assistant.

¶ 38 Finally, we reject Balfour's claim that due to the District Attorney's attempt to

---

12. Because the District Attorney voluntarily removed herself from the prosecution of Balfour, we do not consider whether such recusal was necessary.

avoid even an appearance of impropriety, he may not receive "lenient or special" treatment that might otherwise be available. There is ample authority in analogous cases to demonstrate that a criminal defendant has no right to favorable treatment. *See Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (finding defendant not entitled to windfall resulting from counsel's error); *State v. Greuber*, 2007 UT 50, ¶ 13, 165 P.3d 1185 ("There is no right to a plea offer or to a successful plea bargain."). We therefore see no merit in Balfour's argument.

## CONCLUSION

¶ 39 We affirm the trial court's denial of Balfour's motion to quash the bindover, its denial of Balfour's motion to sever as to counts I, II, and IV, and its denial of Balfour's motion to disqualify the Salt Lake County District Attorney's Office. We reverse the district court's refusal to sever count III.

¶ 40 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and JAMES Z. DAVIS, Judge.