2011 UT App 77

**STATE of Utah, Plaintiff and Appellee,**

v.

**Robert FERGUSON, Defendant and Appellant.**

**No. 20090344–CA.**

Court of Appeals of Utah.

March 17, 2011.

---

Margaret P. Lindsay and Douglas J. Thompson, Provo, for Appellant.

Mark L. Shurtleff and Kris C. Leonard, Salt Lake City, for Appellee.

Before Judges McHUGH, THORNE, and CHRISTIANSEN.

## OPINION

McHUGH, Associate Presiding Judge:

¶ 1 Robert Ferguson appeals his conviction for aggravated sexual abuse of a child, *see* Utah Code Ann. § 76–5–404.1 (2008), arguing that evidence of his prior instances of child sexual abuse should not have been admitted under rule 404(b) of the Utah Rules of Evidence. Although we conclude that the evidence was erroneously admitted, we affirm Ferguson's conviction because there is no reasonable likelihood that the error affected the outcome of the proceedings.

## BACKGROUND

¶ 2 Ferguson was employed at a sculpting studio as a groundskeeper. In February 2008, one of the studio's models (Mother) brought her three daughters with her to work. While Mother modeled, her daughters played nearby. As Mother was gathering the family's belongings at the end of the day, the three girls were playing in the hallway, out of Mother's sight. A short time later, the oldest daughter, five-year-old S.F., returned to Mother; S.F.'s body was "very rigid" and she looked "very scared." S.F. told Mother that a man with "big fat glasses" and a "fat tummy" had "just stuck his hands down [her] pants." Mother contacted the police, who arrested and interrogated Ferguson.

¶ 3 During the recorded interrogation, Ferguson stated that he had seen S.F. at the sculpting studio but initially denied touching her. Upon further questioning, Ferguson

confessed that he "made a mistake," that he had seen S.F. at the studio before, that she "turned [him] on," and that he had found her alone and touched her between her legs for about ten seconds. During the interrogation, he also stated that he had "about fifty" past victims, as well as past convictions for sexual crimes against children.

¶ 4 The statute under which Ferguson was charged identifies certain circumstances that, if proved beyond a reasonable doubt, support a conviction of aggravated sexual abuse of a child, rather than simple sexual abuse of a child. *See id.* § 76–5–404.1(4). One of those circumstances is where "the accused, prior to sentencing for this offense, was previously convicted of any felony, or of a misdemeanor involving a sexual offense." *Id.* § 76–5–404.1(4)(e). Before the trial on charges of aggravated child sexual abuse, the defense moved to bifurcate the proceedings so that the issue of guilt on the charge of sexual abuse would be determined by the jury before evidence of Ferguson's prior convictions would be introduced to establish an aggravating circumstance. In addition, Ferguson filed a motion in limine seeking to prohibit information concerning Ferguson's prior convictions and his references to fifty prior victims from being revealed to the jury for any purpose during the guilt phase of the proceeding. In response to these motions, the State sent a letter to the trial court indicating that it had no objection to bifurcating the issue of prior convictions and that it did not intend to introduce evidence of the convictions during its case in chief.

¶ 5 On the first day of trial, defense counsel requested rulings on the motions. The State again agreed to bifurcate the guilt phase of trial from the determination of whether the State could prove that Ferguson's prior convictions supported a conviction for aggravated sexual abuse of a child. The trial court agreed that the matter should be bifurcated, stating that "if there is a guilty verdict[,] then we conduct ... the second portion of the trial to determine if there are any aggravating factors." Defense counsel

then asked for clarification that evidence of Ferguson's prior convictions would not be admitted during the guilt portion of the jury trial. The trial court responded that the jury "[s]houldn't be hearing about those at all in the case in chief or in any of the statements" because "[t]here's no probative value to that in this case." In response, the prosecutor stated, "[A]nd, I already agreed to that."

¶ 6 The parties and the trial court then discussed the use of Ferguson's police interview. Defense counsel objected to the State playing the audio recording for the jury because it included references to Ferguson's history of child sexual abuse.[1] In response to the trial court's inquiry whether the offending portions could be excised, the prosecutor indicated that "I don't think I could get that ready today" and also advised the trial court that the State intended to rest that day. At that point, the prosecutor asserted that the references to Ferguson's child sexual abuse history were admissible under rule 404(b) or rule 404(c) of the Utah Rules of Evidence. After brief argument from both sides, the trial court ruled that the evidence was not admissible under rule 404(c) because it was not clear if the other victims were under the age of fourteen, *see* Utah R. Evid. 404(c) (allowing the admission of other instances of child molestation in a current case of child molestation to prove character propensity if the act was "committed in relation to a child under the age of [fourteen]"). The trial court reasoned that Ferguson "doesn't describe the age" of these victims and "little girls is nondescript." Nevertheless, the trial court held that the evidence was admissible as other bad acts evidence under rule 404(b) because, taken in context, it was apparent that Ferguson's attraction is to girls under fourteen years of age. Therefore, the trial court concluded that the evidence could be used to prove Ferguson's knowledge and intent during the guilt phase of the jury trial.

¶ 7 The State played the entire tape of the interview for the jury, including the portions where Ferguson's prior convictions and his fifty prior victims were discussed. Ferguson

---

1. Although the prosecutor planned to present the transcript of the interview, the trial court preferred allowing the jury to hear the audio recording of the interrogation because the trial court concluded that giving the jury a transcript "unfairly emphasizes that aspect of the evidence."

then testified in his own defense and denied touching S.F. He also briefly described one of his previous convictions, which occurred in 1988, indicating that he had completed his sentence, as well as a halfway house program. Ferguson claimed that he had committed no offenses since his release from prison, which was in 2000 or 2001. During cross-examination, Ferguson admitted his attraction to young girls, that his prior victims were between the ages of two and seven, and that he had touched the genitals of these prior victims.

¶ 8 S.F. also testified at trial, stating that a man with glasses came up to her in the hallway and asked if she "need[ed] to go to the bathroom" and that when she said, "no," he "sticked [sic] his hands down [her] pants." A woman employed by the sculpting studio testified that she saw the three girls running down the hallway and asked Ferguson, who was just behind them, to open the door so that they could rejoin Mother. The woman then continued in the opposite direction until approximately a minute to a minute-and-a-half later, when the other two girls began crying because they could not find S.F. The woman stated that she looked through a window in a door and saw Ferguson bent over, facing away from her. As the woman entered, she saw doubledoors on the other side of the room closing. She then found S.F. with Mother, to whom S.F. reported the incident that had just occurred.

¶ 9 At the end of the two-day jury trial, Ferguson was convicted of the underlying offense of sexual abuse of a child.[2] In the second phase of the proceedings, which was tried before the trial court based on Ferguson's waiver of his right to a jury, the trial court determined that the State had also established Ferguson's prior convictions and other aggravating factors beyond a reasonable doubt. Ferguson appeals, arguing that the evidence about his previous convictions and the prior fifty victims was erroneously admitted during the jury trial.

2. Although the clerk recited the jury verdict as guilty of aggravated sexual abuse of a child, the jury was instructed only on sexual abuse of a child under Utah Code section 76–5–404.1(2) and

## ISSUE AND STANDARD OF REVIEW

¶ 10 We review a trial court's decision to admit evidence under rule 404(b) for an abuse of discretion. *See State v. Widdison*, 2001 UT 60, ¶ 42, 28 P.3d 1278; *State v. Decorso*, 1999 UT 57, ¶ 19, 993 P.2d 837. In doing so, we "review the record to determine whether the admission of other bad acts evidence was 'scrupulously examined' by the trial judge 'in the proper exercise of that discretion.'" *State v. Nelson–Waggoner*, 2000 UT 59, ¶ 16, 6 P.3d 1120 (quoting *Decorso*, 1999 UT 57, ¶ 18, 993 P.2d 837). The "failure of a trial court to undertake a scrupulous examination in connection with the admission of prior bad act evidence constitutes an abuse of discretion." *State v. Webster*, 2001 UT App 238, ¶ 11, 32 P.3d 976. However, we will not reverse a jury verdict based on the erroneous admission of evidence unless the defendant has been prejudiced as a result. *See State v. Johnson*, 2007 UT App 184, ¶ 34, 163 P.3d 695.

## ANALYSIS

I. The Trial Court Exceeded Its Discretion by Failing To Conduct a Proper Analysis Under Rule 404(b).

¶ 11 It has long been a fundamental tenant of our jurisprudence "that a person can be convicted only for acts committed, and not because of general character or a proclivity to commit bad acts." *State v. Reed*, 2000 UT 68, ¶ 23, 8 P.3d 1025 (citing *State v. Saunders*, 1999 UT 59, ¶ 15, 992 P.2d 951). For that reason, attempts by the prosecution to introduce evidence of the conduct of a defendant charged with a sex crime toward persons other than the alleged victim were traditionally "uniformly rejected." *State v. Wareham*, 772 P.2d 960, 964 (Utah 1989); *see also Reed*, 2000 UT 68, ¶ 28, 8 P.3d 1025 ("Generally speaking, this court has been highly skeptical in sexual assault cases of evidence of other unrelated sex crimes by a defendant on trial for a separate offense. Here, however, the evidence ... is not unrelated; it all concerns this victim and these

the trial court alone determined the existence of the aggravating factors. *See* Utah Code Ann. § 76–5–404.1(2)–(4) (2008).

charges."). Due to the sensitivity of this type of evidence, the earlier approach of the appellate courts was to grant the trial court only limited deference in admitting it and to impose specific requirements that had to be met before the evidence could be admitted. *See State v. Doporto,* 935 P.2d 484, 489–90 (Utah 1997).

¶ 12 After the Utah Supreme Court decided *State v. Doporto,* 935 P.2d 484 (Utah 1997), however, rule 404(b) was amended to reject the additional requirements imposed by *Doporto* and to expressly require that the other bad acts evidence also meet the requirements of rules 402 and 403 of the Utah Rules of Evidence. *See* Utah R. Evid. 404(b) (as amended February 11, 1998); *see also Decorso,* 1999 UT 57, ¶ 18, 993 P.2d 837. In *State v. Nelson–Waggoner,* 2000 UT 59, 6 P.3d 1120, the Utah Supreme Court reviewed the trial court's application of the current version of rule 404(b) in the context of a rape trial in which the trial court allowed two women to testify that the defendant had raped them under circumstances quite similar to those alleged by the complaining witness. *See id.* ¶ 24. Recognizing that such evidence may have unique relevance where the defendant "obviates the victim's consent in a strikingly similar manner," *id.,* the supreme court held that the trial court did not exceed its discretion in admitting the evidence and affirmed the trial court's decision, *see id.* ¶ 32. In doing so, the *Nelson–Waggoner* court explained that the role of the appellate court in reviewing a challenge to the admission of such evidence is to "review the record to determine whether the admission of other bad acts evidence was 'scrupulously examined' by the trial judge in the proper exercise of [its] discretion." *Id.* ¶ 16 (quoting *Decorso,* 1999 UT 57, ¶ 18, 993 P.2d 837). Thus, the obligation to conduct this scrupulous examination falls on the trial court. *See id.; see also Decorso,* 1999 UT 57, ¶ 18 & n. 2, 993 P.2d 837; *Webster,* 2001

UT App 238, ¶ 11, 32 P.3d 976. And that responsibility must be undertaken in a thoughtful and scrupulous fashion due to the important competing interests involved when other bad acts evidence is offered.[3] We now consider whether the trial court engaged in such a scrupulous examination here.

■ ¶ 13 Rule 404(b) provides that

[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

Utah R. Evid. 404(b). In order for the trial court to admit evidence under rule 404(b), the court must engage in a three-part analysis. The "trial court must first determine whether the bad acts evidence is being offered for a proper, noncharacter purpose." *Nelson–Waggoner,* 2000 UT 59, ¶ 18, 6 P.3d 1120. "Second, the court must determine whether the bad acts evidence meets the requirements of rule 402, which permits admission of only relevant evidence." *Id.* ¶ 19. "Finally, the trial court must determine whether the bad acts evidence meets the requirements of rule 403" by conducting a balancing test to determine whether the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice" or other considerations. *Id.* ¶ 20; *see also* Utah R. Evid. 403.

■ ¶ 14 In evaluating evidence under rule 403, courts should consider factors, including those set forth in *State v. Shickles,* 760 P.2d 291 (Utah 1988), such as

the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of

---

3. A month after the decision in *State v. Nelson–Waggoner,* 2000 UT 59, 6 P.3d 1120, was issued, the supreme court had further occasion to address the application of rule 404(b) in the context of evidence of prior incidents of sexual abuse in *State v. Reed,* 2000 UT 68, 8 P.3d 1025. Although *Reed* involved prior bad acts committed against the complaining witness, the decision includes dicta cautioning that such evidence against persons other than the complaining witness has been allowed "under extremely narrow circumstances and where it was indispensable to deciding the case," and that "the circumstances that would allow such evidence to be admitted are rare and require the highest scrutiny of the trial judge." *Id.* ¶ 28 n. 3.

alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

*Id.* at 295–96; *see also Decorso,* 1999 UT 57, ¶ 23, 993 P.2d 837. As discussed, the trial court must conduct a "scrupulous" examination of the evidence in light of these requirements and the failure to do so constitutes an abuse of its discretion. *See Webster,* 2001 UT App 238, ¶ 11, 32 P.3d 976; *see also Decorso,* 1999 UT 57, ¶ 18 & n. 2, 993 P.2d 837 (noting that such evidence must be "scrupulously examined" by "the dotting of i's and crossing of t's" (internal quotation marks omitted)).

▉ ¶ 15 The record here reflects neither the application of all three prongs of the analysis nor a scrupulous examination of the bad acts evidence in light of the facts and circumstances of the crime at issue. Nevertheless, after determining that the evidence did not satisfy the requirements of rule 404(c),[4] the trial court admitted it under rule 404(b), stating,

> I think the entire interrogation is admissible under 404(b) and . . . I think taken all in its context it is clear what he's talking about. It isn't ambiguous. When he says [fifty] victims it follows right on the heels of his saying that the young children, the little girls have turned him on. I think we do know that, that he's making a specific reference to his commitment to prison, we do know that that commitment was for a sex abuse of a child which inherently involves a victim of [fourteen] or under. So I'm going to find that . . . this is admissible evidence under 404(b).

The following day, the court further indicated that the evidence was admissible "because it demonstrates [Ferguson's] knowledge and intent in the conduct that's alleged by the State." We agree with Ferguson that this limited consideration falls well short of the required 404(b) inquiry.[5] *See Nelson–Waggoner,* 2000 UT 59, ¶ 23, 6 P.3d 1120 ("In conducting a scrupulous examination of this evidence, the trial court determined that the other victims could testify to the circumstances of the other alleged rapes only if the prosecution could demonstrate that each rape . . . included at least six of [ten factual characteristics]."); *State v. Marchet,* 2009 UT App 262, ¶¶ 39–46 & n. 9, 219 P.3d 75 (affirming the admission of testimony about other alleged rapes in current rape case where the trial court "identified nine factual similarities among [the victims'] accounts"; "further refined its analysis to isolate the behaviors it found particularly probative of the issue of consent"; excluded the testimony of one alleged victim; and explicitly considered each of the *Shickles* factors), *cert. denied,* 221 P.3d 837 (Utah 2009).

▉ ¶ 16 Even if we assume that the bad acts evidence in this case was admitted for a proper purpose because Ferguson pleaded guilty to a specific intent crime, *but see State v. Verde,* 2010 UT App 30, 227 P.3d 840 (McHugh, J., concurring), *cert. granted,* 238 P.3d 443 (Utah 2010), and that it is relevant, *see* Utah R. Evid. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would

4. Evidence of similar crimes in child molestation cases involving complainants under the age of fourteen may be admissible to prove character propensity under rule 404(c) of the Utah Rules of Evidence if certain requirements are met, which include conducting a separate hearing to determine (1) whether the other acts would be a sexual offense in Utah; (2) whether the evidence "tends to prove the accused's propensity to commit the crime charged"; and (3) whether, after considering the *Shickles* factors, the evidence should be admitted under rule 403. *See* Utah R. Evid. 404(c) advisory committee's note. Obviously, rule 404(c) dictates pre-admission requirements that are difficult, if not impossible, to meet if the rule is first invoked on the morning of the first day of a jury trial. *See infra* note 5.

5. Due to the importance and complexity of the examination required before evidence of the defendant's other bad acts can be admitted under rule 404(b) of the Utah Rules of Evidence, the parties should alert the trial court to the need for a ruling on the admissibility of such evidence well before the morning of the first day of a jury trial. Where members of the jury venire are waiting to be empaneled and subpoenas have been served compelling witnesses to appear, the trial court is unduly hampered in its efforts to conduct the scrupulous examination of the bad acts evidence required by our jurisprudence.

be without the evidence."), there is no indication that the trial court performed the final step of the rule 404(b) analysis. Before admitting other bad acts evidence, even if relevant and offered for a proper purpose, the trial court was required to consider whether, applying rule 403 and factors like those identified in *Shickles*, the probative value of the evidence outweighs the risk of unfair prejudice to Ferguson. While "[t]he court need not identify each of the *Shickles* factors in its analysis," we must be able to "discern that it made a sufficient inquiry under rule 403." *State v. Harter*, 2007 UT App 5, ¶ 30, 155 P.3d 116; *see also State v. Allen*, 2005 UT 11, ¶ 28, 108 P.3d 730.

¶ 17 Other than some discussion about the age of the victims, the record does not reflect that the trial court examined any details of Ferguson's prior convictions or of his fifty prior victims before admitting that evidence. Indeed, the State offered no information from which the trial court could have done so. Even if we consider the information the State elicited from Ferguson at trial about the ages of his prior victims and that he touched their genitals, the inquiry was inadequate. For example, there is nothing in the record about the circumstances surrounding these prior bad acts from which the trial court could compare the distinctive features of Ferguson's conduct then with the allegations supporting the current offense. Likewise, the record reflects no analysis concerning the approximately twenty-year lapse of time between Ferguson's most recent conviction and the current charge, the need for the evidence, any alternative means of proof, or the strength of the evidence of the other bad acts. *See Shickles*, 760 P.2d at 295–96. Moreover, the record does not include any consideration by the trial court of the jury's potential reaction to Ferguson's admission that he molested fifty prior victims and that he had twice been convicted of child sexual abuse. *See id.* This failure is particularly troubling under the facts of this case where the large number of prior child sexual assault victims alone could result in "overmastering hostility" toward the defendant. *Cf. Marchet*, 2009 UT App 262, ¶¶ 39–46 & n. 9, 219 P.3d 75 (affirming the admission of other bad acts evidence where the trial court allowed only two of the State's witnesses claiming to be prior victims of the defendant to testify).

¶ 18 Because the record is devoid of any indication that the trial court undertook the scrupulous examination required, we conclude that it exceeded its discretion by admitting evidence of Ferguson's other bad acts under rule 404(b). *See State v. Nelson–Waggoner*, 2000 UT 59, ¶ 16, 6 P.3d 1120 (holding that the trial court has properly exercised its discretion if it scrupulously examined the admission of the other bad acts evidence); *State v. Webster*, 2001 UT App 238, ¶ 11, 32 P.3d 976 (holding that the "failure of a trial judge to undertake a scrupulous examination in connection with the admission of prior bad act evidence constitutes an abuse of discretion").

II.  Ferguson's Confession and the Corroborating Testimony from Other Witnesses Rendered the Erroneous Admission of the 404(b) Evidence Harmless.

¶ 19 Although the trial court erred in failing to conduct a thorough analysis under rule 404(b), "[w]e will not overturn a jury verdict for the admission of improper evidence if the admission of the evidence did not reasonably affect the likelihood of a different verdict." *State v. Johnson*, 2007 UT App 184, ¶ 34, 163 P.3d 695 (internal quotation marks omitted). "Harmless errors are those that are sufficiently inconsequential so no reasonable likelihood exists that the error affected the outcome of the proceedings." *C.T. ex rel. Taylor v. Johnson*, 1999 UT 35, ¶ 18, 977 P.2d 479 (internal quotation marks omitted). Here, the other evidence of Ferguson's guilt was overwhelming.

¶ 20 Ferguson admitted during the police interrogation that he had seen S.F. at his workplace before, that she "turned [him] on," and that when he found her alone he used the opportunity to touch her between her legs. The woman who worked at the sculpting studio with Mother testified that she saw Ferguson walking behind the three sisters and that within a matter of minutes, the other girls were crying because they had become separated from S.F. The woman almost immediately observed Ferguson bent

over behind a door, saw the doors on the other side of the room closing as she entered, and then located S.F. with Mother. Mother testified that S.F. was visibly upset and reported that a man matching Ferguson's description had "just stuck his hands down [her] pants." S.F. also testified, confirming that a man meeting Ferguson's description came up to her in the hallway and stuck his hand down her pants. Ferguson's confession corroborates both S.F.'s and the woman's version of events. Ferguson admitted that he bent down and touched S.F. between her legs for about ten seconds. That admission is consistent with what the woman observed and with what S.F. told Mother and described at trial. Furthermore, Ferguson acknowledged that after S.F. left the room, she went to Mother, and that the other woman who worked at the studio entered the room after S.F. left. Although we recognize that the nature of the erroneously-admitted evidence in this case gave it the potential of being highly prejudicial, the other evidence presented at trial was sufficiently strong as to convince us that there was "no reasonable likelihood" of a different result. *See id.*

## CONCLUSION

¶ 21 The trial court exceeded its discretion by admitting evidence under rule 404(b) without scrupulously examining the admissibility of the evidence. However, in light of Ferguson's confession and the corroborating testimony presented at trial, we conclude that the error was harmless because there was no reasonable likelihood of a different result.

¶ 22 Affirmed.

¶ 23 WE CONCUR: WILLIAM A. THORNE JR. and MICHELE M. CHRISTIANSEN, Judges.